CATHERINE HEUSER *et al.*

*v.*

JONATHAN M. HARRIS, Executor, etc., *et al.*

| 42 | 425 |
| 121 | 276 |
| 121 | 278 |
| 42 | 425 |
| 145 | 644 |
| 42 | 425 |
| 44a | 501 |
| 42 | 425 |
| 158 | 637 |
| 42 | 425 |
| 70a | 583 |
| 42 | 425 |
| 169 | 450 |
| 169 | 464 |
| 171 | 449 |
| 171 | 468 |
| 42 | 425 |
| 181 | 258 |
| 42 | 425 |
| 187 | 3 39 |

1. TESTATOR—*may dispose of his property as he chooses.* A testator, of sound mind, may make such final disposition of his estate by will as he may choose, subject to the statutory rights of his widow, if he leaves one.

2. SAME—*estate of—next of kin have no equitable right to.* Next of kin, no matter how near the degree of relationship, have no equitable right to their kinsman's estate. A disposition of it by will, or by deed, there being no legal impediment, determines its destiny. But in case of intestacy, their right to the estate becomes a legal one.

3. WILLS—*of charitable bequests—what will be considered certain.* A testator, by his will, made two bequests, as follows : The lands, of which he died seized, to be sold at public auction, one-half of the proceeds to go to the school district in which the lands were located, to be used for school purposes only, and to be under the control of one trustee, to be elected by "the people" of the district for the term of four years, who should give a bond for the faithful discharge of his duties, no person to receive any per cent of the fund for their trouble, and the interest only of such fund to be used ; the other half of the proceeds to go "to the poor of Madison county," the interest of such fund only to be used. *Held,* that these bequests are operative and valid ; and certain, both as to the object and recipient ; and made to corporations by law capable of taking by deed or will.

4. SAME — *charitable bequests—favored in the law.* It is the policy of the law to uphold charitable bequests of this character, and they have received the unqualified sanction of courts of chancery by a long and uninterrupted line of decisions, and are held to be within the very letter and spirit of the statute of the 43 Eliz. chap. 4, which is in force in this State.

5. SAME — *concerning the appointment of trustee—failure to elect—court of chancery may supply.* As to the bequest made to the school district, it is immaterial whether a trustee be elected or not,—if not, the bequest would not, for that reason, be lost, as a court of chancery upon proper application may supply one, it having over this subject unquestionable jurisdiction, and will execute it *cy pres* or as near the intention of the testator as possible, and this, without reference to the statute of 43 Eliz. chap. 4.

6. SAME — *the phrase "the people" — to be understood in a political sense.* The phrase "the people," used to designate the persons who are to vote for the trustee, who is to have control of the school fund, must be understood in a political sense, and to mean those persons only in whom the election power is deposited.

7. SAME — *when bequest not lost by change of beneficiary.* Nor is it any objection that the donee, the school district, is subject to be changed by legislative enactment. The mere fact that beneficiaries may change will not defeat the bequest, if the object of the gift can be substantially reached.

8. SAME — *charitable bequests more favored than those made to individuals.* Charitable bequests are favored in the law, and will receive a more liberal construction than will be allowed in gifts made to individuals, as in the latter case, the mode in which the legacy is to take effect is deemed to be of the substance of the legacy; but when the legacy is to charity, the court will consider charity as the substance, and in such cases, if the mode pointed out fails, it will provide another by which the charity may take effect.

9. SAME — *charitable bequests will invariably be sustained.* When a bequest is made to charity, it matters not how uncertain the persons or the objects may be, or whether the persons who are to take are *in esse* or not, or whether the legatee be a corporation capable by law of taking, or whether the bequest can be carried into exact execution or not; in all such cases the court will sustain the legacy, and when a literal execution becomes inexpedient, the court will execute it *cy pres,* or as nearly so as possible.

10. SAME — *intention of donor must control.* The intention of the donor of a charity will control, unless it is impracticable, in which event the court may change it, *cy pres.*

11. SAME — *object or place cannot be changed.* But, while charities are administered by courts upon *cy pres* principles, for the purpose of carrying into effect the intention of the donor, they cannot change the object or place because the fund could be more judiciously applied to another place, or to a different object.

12. SAME — *legacies to individuals — cannot be executed cy pres.* The doctrine of *cy pres* cannot be resorted to in cases of legacies left to individuals.

13. SAME — *validity of bequest "to the poor of Madison county."* As to the bequest, "to the poor of Madison county," it was intended by that term to mean, the paupers of that county, — those who are maintained at public expense; and the County Court of that county, being the legal guardian of that class of persons, is a proper donor, and can take the fund and control it as trustee of the poor, in the mode prescribed by the will. In such case, there is no necessity of resorting to the doctrine of *cy pres.*

APPEAL from the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

This was a bill in chancery filed in the Circuit Court of Madison county, by Catherine Heuser and Mary Schneider, the appellants, against Jonathan M. Harris, executor of Henry Seibert, deceased, and the school directors of Union district

No. 4, of town 5, range 6, west of the 3d principal meridian, and the County Court of Madison county, the appellees, to set aside the fourth clause contained in the will of the said Seibert, as being void for uncertainty, the same being bequests to said school district, and to the poor of Madison county, of the proceeds arising from the sale of certain lands, thereafter to be made by the executor. The bill was demurred to, and demurrer sustained and bill dismissed by the court below, whereupon an appeal was taken to this court.

The facts in this case are fully stated in the opinion.

Mr. DAVID GILLESPIE, for the appellants.

Mr. A. W. METCALF, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

About the 6th of February, 1865, one Henry Seibert, then of Madison county, in this State, departed this life, leaving a will, which was duly proved in the probate court of that county. The will bore date, Madison county, October 4, 1862, the fourth clause of which, after appointing Jonathan M. Harris his "administrator," was as follows: "I do request that the administrator shall sell the land at public auction, to the highest bidder, first giving six months' notice in the Edwardsville paper and in one Alton paper, on time, as follows, one and two years credit, etc.; this money is to be divided as follows, one-half shall go to the school-district in which the farm lays, and shall be under the control of one person elected by the people of the district, and he shall be elected for four years at one time, and be required to give security for the faithful trust put in his hands, and no one shall receive any per cent for their trouble; this shall be loaned out, and none of it shall be used except the interest, and it for no other purpose than for schooling the children, and the other half shall go to the support of the poor of Madison county, but none of it shall be used but the interest, but first the administrator

shall have a reasonable pay out of the proceeds of land for his labor."

Catharine Heuser and Mary Schneider, being his sisters, and only relatives nearest of kin to the testator, exhibited their bill in chancery in the Madison Circuit Court against Jonathan M. Harris, to whom letters of administration with the will annexed had been granted, and the directors of school district No. 4, town 5, N. R., 6 W., and the County Court of Madison county, alleging that they were the only heirs at law of the deceased, and claimed that this fourth clause of the will was inoperative and void on account of uncertainty, — that portion of it giving one-half of the proceeds of the sale of the land to the school district in which the farm was situate, in this, that by law the school directors of that district have the care, custody and control of all school money belonging to the district or accruing to the same, and are the only persons authorized by law to take charge of the same. That the will provides no mode by which the person who is to have control of this fund shall be elected; that, by law, school districts can be changed, and the will provides that the person shall be elected by the people of the district, applying indiscriminately to men, women and children, whether of sufficient understanding to vote or not; and the will further provides that this person, so to be elected, shall give security for the trust, without stating to whom such security shall be given, or the manner in which it is to be given, or the amount thereof, and therefore the provision cannot be executed. And as to that part of the will giving the other half of these proceeds to the support of the poor of Madison county, that is void for uncertainty, and cannot be carried into effect, because the money is not placed in the hands of any person for distribution, nor is there any method or manner prescribed in which it is to be distributed, or in what proportion, nor can it be ascertained to whom the money is to be distributed, as "the poor of Madison county" is a very uncertain and indeterminate term, and no method is provided by the will of ascertaining who are to take the benefits of the bequest.

The bill charges that the administrator had no lawful authority to make sale of the land, as the title to it is in them, complainants, as the only heirs at law of the deceased.

The prayer is, that this fourth clause of the will be declared null and void, and that the administrator be enjoined from selling the land, and the title thereto be decreed in complainants.

A general demurrer was put in to this bill, which was sustained by the court, and the bill dismissed.

To reverse this decree this appeal is taken, and this decision on the demurrer and dismissing the bill is assigned as error.

It is argued by the counsel for appellants that the policy of the law is against bequests of the description made in this will, and the superior equities are in favor of the appellants, they being his sisters and only heirs at law, who should have been the natural objects of his charity, and he says that statutes have been passed in some of the States to prevent such disposition of property.

There being no statute in this State prohibiting such bequests, is it not a fair inference the law-making power of this State has not regarded them as impolitic? As to the superior equities of an heir at law over a devisee under a will, we are unable to perceive them. No next of kin, no matter how near he may be, can be said to have any equitable right to his kinsman's estate. The law of the land has placed every person's estate wholly under the control of the owner, subject to such final disposition of it as he may choose to make by his last will and testament, subject to the statutory rights of his widow, if he leaves one. Ever since the introduction of the practice of making wills it has been universally conceded that the testator may dispose of his property by his own will as he pleases.

A child has no natural right to the estate of his father: if he has, it is a right which cannot be asserted against the testamentary disposition of the estate by the father. So, in the absence of other relatives near of kin to the owner of an estate, a brother or sister, or parent, might seem to have a right to the estate, and so they would, in all these cases, upon intestacy, for it then becomes a legal, not an equitable right; so that

it cannot be asserted, that the nearest of kin has any equity whatever in the estate of his kinsman. A disposition of it by the owner, by will, or by deed, there being no legal impediment, determines its destiny, and no court in the world can afford relief, or do more than sympathize with the disappointed expectant. We have seen no legislation of any State directed against the policy of such bequests, and recollect no judicial decision in that direction. On the contrary, the courts, both in England and in this country, have recognized and upheld such charities, following, in this respect, the civil law, from which the rudiments of the law of charities was undoubtedly derived. It was a fixed maxim in Roman jurisprudence, that legacies to pious uses, which included all legacies destined for works of piety or charity, whether they related to spiritual or temporal concerns, were entitled to peculiar favor and to be deemed privileged testaments. 2 Story's Eq. Jur. 489, § 1137. By this law, the construction of testaments of this nature was most liberal, and the legacies were never permitted to be lost, either by the uncertainty or failure of the persons or objects for which they were destined. As instances, if a legacy was given to the church, or to the poor generally, without any description of what church or what poor, this law sustained it, by giving it, in the first case, to the parish church of the place where the testator lived; and in the latter case, to the hospital of the same place; and if there was none, then to the poor of the same parish. Id. § 1139.

These principles of pious legacies under the high authority of the civil law, were readily introduced into the common law of England, anterior to the enactment of 43 Elizabeth, chapter 4, known as the statute of charitable uses, and have been known there and recognized for ages. Prior to this statute, however, devises to charitable uses generally, without imposing a trustee, and devises to a non-existing corporation, or to an unincorporated society, were held utterly void for want of a person capable of taking as devisee. It was to remedy this defect, that this statute was enacted, providing a mode of enforcing such uses by a commission under the direction of the Court of Chan-

cery (id. § 1146); but it was soon settled, that the remedy was not confined to the proceeding by commission, but that the Court of Chancery had jurisdiction by original bill. The mode of proceeding by commission has now fallen into disuse, and information in the name of the attorney-general, as an officer of the crown, the King being viewed as the father of the country, and the proceedings instituted for the public good, is now the usual mode.

A long and uninterrupted course of decisions under this statute shows, most conclusively, that bequests of the nature of those in the will in question have received the unqualified sanction of the English Court of Chancery. They are held to be within the letter and spirit of the statute 43 Elizabeth, chapter 4, for, in the preamble thereto, are enumerated devises " for poor people," " for schools of learning, free schools and scholars of universities."

The object of this bequest is certain, and so is the recipient, being the school district in which the farm is situate, and that, by law, is a corporation and capable of taking. Here, then, are two of the difficulties suggested by appellants out of the way, and the remaining one is easily removed. That has reference to the appointment of a trustee. It is said by appellants' counsel, that there is no power to compel the election of a trustee every four years, and therefore the bequest cannot be carried out; that it is provided by the will that this election shall be by the people of the district, which would include both sexes and the children; and that by law the school directors have control of all the school property of the district, and therefore the designation of another person to take control of this bequest, is contrary to the law and to public policy.

It may be answered to all this, that there is no power to compel the election of any one to any office. Those possessed of the elective franchise, may exercise it or abstain, as best accords with their views of policy in the particular case. Elections are voluntary, and should the people of the district refuse to elect a trustee, the bequest would not, for that reason, be lost, for it is made to a corporation capable of taking it, and the

mere instrument to control its application can be readily provided by a resort to a court of chancery. As to the persons who are to vote, designated in the will as "the people" of the district, that means, simply, such persons as vote at elections. As well remarked by appellees' counsel, the term must be understood in a political sense, and means those, and only those, with whom the elective power is deposited—those who elect officers of district schools, and we think with him, that, to consider "the people" in any other sense, would do violence to the language.

But suppose the will did require an election by the people in the sense in which appellants' counsel would have that term understood, we do not think that would overturn the bequest, for why should not the whole population in the school district vote for this trustee? What principle would be violated if they did? We see none.

If, however, a trustee should not be elected, the school 'district could apply to chancery to supply one, by giving to the will the most liberal construction, so as not to permit the bequest to be lost. Over this subject the jurisdiction of chancery is unquestionable, the statute 43 Elizabeth, ch. 4, being in force in this State. Scates' Comp. 720.

It is well settled in the English chancery courts, that, where money is given to a charity generally and indefinitely, without trustees or objects selected, the King, as trustee, or *parens patriæ*, will direct a scheme, and where trustees are appointed, the chancellor will direct a scheme for the charity, he having jurisdiction over the trust (Boyle on Charities, 238, 239), and this when neither the trustee nor objects are selected. In this case both the object and the trustee are pointed out, the only real difficulty being the election of the trustee in the mode specified, which, by the argument of appellants, is so utterly impracticable as to defeat the appointment, and leave the fund without any person to control it. Surely, the powers of a court of chancery should extend so far as to supply a trustee to manage a testamentary bequest, and if it be admitted one could not be elected under this will, a court of chancery, to

carry out the intention of the testator, would, by a liberal intendment, appoint one. Every reasonable act will be done, and the most liberal construction of the will had, by a court of chancery, to aid the beneficiaries, when the intention is plain and undeniable. *Hadley* v. *Hopkin's Academy*, 14 Pick. 240.

But, without reference to 43 Elizabeth, we think that the innate, inherent jurisdiction of a court of chancery is fully competent to supply defects of this nature. The cases referred to by the counsel for appellees are numerous, and to the point. One, and it may be called a leading case, is the case of *Fidal* v. *Girard*, 2 How. (U. S.) 127. There it was held that donations for the establishment of colleges, schools and seminaries of learning, and especially such as are for the education of orphans and poor scholars, are charities, in the sense of the common law, and that under the statute 43 Elizabeth, chapter 4, such charity is not void because the beneficiaries thereof are uncertain and indefinite, and a court of equity has jurisdiction to enforce the charity for their benefit, and the right of the beneficiaries to have it enforced is not affected by the fact that no court had existed in Pennsylvania having equity powers or with jurisdiction to enforce such trusts.

This seems an answer to the argument of appellants, that school districts are subject to change by the legislature, and as the bequest was to the school district, as then established, the then inhabitants of the district were in the contemplation of the testator, as the beneficiaries, whereas, by a change of the district, some of them may be located outside of it and cannot avail of it. But the farm, notwithstanding, will be in some school district, and its inhabitants be the beneficiaries. The school district where the farm lies, is a never-dying donee, and it is quite immaterial who people it; the object of the testator's bounty will be fully attained. The mere fact, that the beneficiaries may change, can be no reason why the donees should not take the bequest, if the object of the gift can be substantially reached. Such a charity as this is favored in the law, and will receive a more liberal construction than will be allowed in gifts to individuals.

For instance, if a testator gives his property to such person as he shall name to be his executor, and he appoints no executor, or if one is appointed and he dies before the testator, and no other is appointed in his stead, the testator will be held intestate, and the next of kin will take the estate; but, if a like bequest be given to the executor in favor of a charity, the court of chancery will, in both instances, supply the place of an executor and carry into effect that very bequest, which, in the case of individuals, must have failed altogether. 2 Story's Eq. Jur. § 1165, 512, referring to *Mills* v. *Farmer,* 1 Merivale, 55, 96; *Moggridge* v. *Thackwell,* 7 Vesey, 36. So, if an estate is devised to such person as the executor shall name, and no executor is appointed, or, if one being appointed, dies in the life of the testator and no other is appointed in his place, the bequest becomes a mere nullity; yet such a bequest, if for a charity, would be good, and the court of chancery would, in such case, assume the office of executor and execute it. Id. 1166, referring to the same cases, *supra,* and to *Attorney General* v. *Jackson,* 11 Vesey, 365, 367.

In carrying into execution a bequest to an individual, the mode in which the legacy is to take effect is deemed to be of the substance of the legacy; but, when the legacy is to charity, the court of chancery will consider charity as the substance, and in such cases, if the mode pointed out fail, it will provide another mode by which the charity may take effect. 2 Story's Eq. Jur. § 1167, referring to the cases above cited and to *Attorney General* v. *Berryman,* 1 Dick. 168; *Denyer* v. *Durce,* 1 Tam. 32; 2 Roper on Legacies, 175 to 181; *Attorney General* v. *Iron Monger's Company,* 1 Craig & Phillips, 208, 222, 225; Same case in 2 Beav. 313; *Attorney General* v. *The Cooper's Company,* 3 id. 29; *Same* v. *The Draper's Company,* 2 id. 508. And another principle well established is, that, if the bequest be for charity, it matters not how uncertain the persons or the objects may be, or whether the persons who are to take are *in esse* or not, or whether the legatee be a corporation capable by law of taking or not; or whether the bequst can be carried into exact execution or not; for, in all these and the

like cases, the court will sustain the legacy and give it effect according to its own principles, and where a literal execution becomes inexpedient or impracticable the court will execute it as nearly as it can according to the original purpose or *cy pres*. Id. § 1169.

The opinions in the cases of *Moggridge* v. *Thackwell*, 7 Ves. and *Mills* v. *Farmer*, 1 Merivale, were by Lord ELDON, and result in this, that, if a testator has manifested a general intention to give to charity, the failure of the particular mode by which the charity is to be effected will not destroy the charity, for, the substantial intention being charity, equity will substitute another mode of devoting the property to charitable purposes, although the formal intention, as to the mode, cannot be accomplished.

So, here, if the election of a trustee be impracticable, — if all the machinery prepared by the testator cannot be put in working order, still the object of his bounty must not be defeated on that account. A court of equity will execute it *cy pres*, or as near to the intention of the testator as it can, to effect the purpose.

The counsel for appellants claim that the court will not under the *cy pres* power make a disposition of this property different from that proposed by the testator. But the authorities cited show, if the mode the testator has designated is impracticable, and counsel insist it is, then the court can and will substitute another mode, *cy pres*, or as near the one designated as may be practicable.

The object of the bequest cannot be changed. As this court said in *Gilman et al.* v. *Blackburn et al.*, 16 Ill. 225, and referred to by appellants' counsel, the intention of the donor of a charity will control unless that is impracticable, in which case it may be altered *cy pres*, and that charities are administered by the courts on *cy pres* principles for the very purpose of sustaining and carrying into effect the intention; but they cannot change the object or place because the fund could be more judiciously and efficiently applied in another place, or to a different object. This doctrine of *cy pres* has no place in lega-

cies to individuals, but, in a charity like this, there is reason
and good sense in presuming, that, had the testator known the
election of a trustee, in the mode he proposed, his executing
bond, and to serve as such gratuitously, he would have adopted
another mode, and the court must act as he himself would
have done, and this is the foundation of the doctrine *cy pres.*
An approximation to the intention of the testator, as near as
possible, is all that is meant by this doctrine. And when the
object is so plainly manifested, great latitude would be allowed
in the selection of a trustee, or in a mode by which the inten-
tion can be carried into full effect. This would seem to be a
matter by no means difficult, but it is not for this court to
suggest it.

The counsel for appellants insists, that the bequest to "the
poor of Madison county" is so general and vague, that it can-
not be carried into effect. It is urged, that, as the will makes
no appointment of trustees, or provides in any way who shall
have the management of this portion of the proceeds of the
farm, the court cannot execute the trust on the *cy pres* prin-
ciple.

We think the principles above stated, and the cases referred
to, fully settle this branch of the case.

That the term, "the poor of Madison county," is vague,
having no definite meaning, it is so, in the sense in which apel-
lants' counsel presents it. The poor of a county are, in legal
contemplation, understood to be those who are dependent upon
public charity ; in other words, they are the paupers who are
maintained by taxes levied on the people, or by the income
from the public property. They are under the care and super-
vision, in some counties, of the County Courts, and in other
counties, of the board of supervisors of the county, either of
which is capable of taking a bequest of this kind as a trustee.
And so must the counsel for appellant supposed when he
drafted complainants' bill, as the County Court is made one of
the defendants to the bill, on the only hypothesis, as we sup-
pose, they might claim as donees of one moiety of the proceeds
of the sale of the farm, and in this he did not err.

The counsel for appellees has referred to some cases where bequests of this character have been sustained. *The State* v. *Girard*, 2 Iredell Ch. (N. C.) 210, where the devise was of lands and stock to the poor of Beaufort county, and *Witman* v. *Lex*, 17 Serg. and Rawle, 88.

In § 1139 of 2 Story's Equity Jurisprudence, before cited, a bequest to the poor, without any description of what poor, will go to the hospital of the place where the testator resided, and if there be none there, to the poor of the same parish. But here the bequest is made to the poor of Madison county, and the legal guardians of that poor, namely, the County Court, can administer the fund. They are a corporation, and capable of taking by deed or will, so that there can be no necessity here of resorting to the doctrine of *cy pres*. The court of chancery would not dismiss a bill filed by that court for the purpose of getting possession of this fund, however insignificant it may be, or how unavailing to satisfy the wants of those whose condition excites so much commiseration, and which prompted the munificence of this benevolent testator.

The views we have here expressed dispose of the objections made by appellants to both of these bequests. We entertain no doubt, if the election of a trustee, and his qualification are impracticable, a court of chancery, on a proper application, would remodel the will in this regard, *cy pres*, as near as possible to effectuate the design of the testator.

As to the bequest to the poor of Madison county, we are of opinion, for the reasons given, and on authority, that the paupers of the county were meant by that term, and that the County Court of that county is a proper donee of the fund, and they can take it and control it as the trustee of the poor, in the mode prescribed by the will.

The decree of the Circuit Court dismissing the bill is affirmed.

*Decree affirmed.*