*(Superior Court of Chicago. In Chancery.)*

## Thos. Clowry, Adm'r, etc.

### vs.

## Unknown Heirs of Patrick Brennan, Margaret Brennan, etc.

(November, 1869.)

1. DEED—CONSTRUCTION OF—INTENT OF GRANTOR CARRIED OUT. Under a deed to A. of "one-half * * * of the premises and * * * such * * * further interest, if any, in the remaining half of said premises as she * * * as widow * * * would be entitled to under the law of Illinois if her husband had died seized of an unincumbered title in fee simple to said premises," there being no issue of A. and her husband, A. is entitled to dower in "the remaining one-half," and not to one-half of the one-half in fee simple and dower in the remaining one-quarter, as the intent of the grantor was that her interest in the remaining one-half should be the same as if her husband had deed seized in fee simple of the *entire premises.*

2. CHARITABLE USE—WHAT IS. A bequest of an estate to an executor to give to such charitable and religious purposes as he shall see fit, is a bequest for a charitable use within the meaning of the Statute of Elizabeth, and valid.

3. CHARITABLE USE—DEATH OF TRUSTEE—WHEN COURT WILL NOT SUPERVISE. Where an estate is left to an executor for such charitable purposes as he may deem fit; should the executor die without exercising his discretion, the court will not undertake the supervision of the trust, but will allow the estate to go to the heirs of the donor.

Petition for partition. Heard before Judge Jameson. The facts are stated in the opinion.

*Thos. Clowry, pro se.*

*Sleeper, Whiton & Durham,* for defendants.

JAMESON, J.: —

On the first of June, 1863, Patrick Brennan, who was seized of lot 5, in block 3, in Brainard & Evans' addition to Chicago, together with his wife, Margaret, conveyed the same to one Martin Brennan as trustee, in trust to secure certain sums at a certain time therein mentioned, payable to another Patrick Brennan, whom I shall designate as Patrick Brennan

2d.   Brennan 1st died Nov. 14, 1865, intestate, leaving Margaret, his widow, but no children or descendants of children surviving.   Margaret was afterwards duly appointed the administratrix of his estate, on the 19th of July, 1866.   In the mean time, on the 4th of January, 1866, Martin Brennan, the trustee, advertised for non-payment of the amount due, and sold the lot in question, under the power in the trust deed, Patrick Brennan 2d, the creditor, being the purchaser.   On the 13th of September of the same year, Patrick Brennan 2d, in consideration of $5.00, conveyed to Margaret Brennan, widow, and to the unknown heirs of Patrick Brennan, deceased, the lot in question, except the west twenty feet thereof.   The quantity of the estate thus conveyed to the several parties was described in the deed as follows: "To the said Margaret Brennan one-half, undivided, of the premises above described, absolutely and in fee simple, and moreover, such other and further interest, if any, in the remaining half of said premises, as she, the said Margaret Brennan, as widow of the said Patrick Brennan, deceased, would be entitled to, under the law of Illinois, if her husband had died seized of an unencumbered title, in fee simple, to the said premises; and the residue of the said remaining half of the said premises shall be had and held in fee simple by the said unknown heirs of the said Patrick Brennan, deceased."

In June, 1867, Margaret Brennan, the widow, died, leaving a will, which was duly proved, and in which she named the late Dr. Dennis Dunne, her executor.   By this will, she directed the said Dunne to sell her real estate, and that the proceeds thereof, after the payment of her debts, be divided as follows: "The sum of $500 to Patrick Donohoe, of Greensburgh, in the state of Pennsylvania, and all the rest and residue of the proceeds of said real estate, be given by her executor to such charitable and religious purposes as he might deem fit."

Letters testamentary were issued to Dennis Dunne, on the 19th of June, 1867, but he died in December, 1868, and the petitioner, Thomas Clowry, was appointed administrator *de bonis non,* with the will annexed.   Dennis Dunne also left a

will in which he appointed Edward Dunne and John Cough-lan, his executors; the latter of whom qualified, and is made a defendant in this case. This petition was filed by the administrator *de bonis non,* Clowry, for a partition of this lot, to enable him to carry out the provisions of the will of Margaret Brennan, under the directions of this court.

The first question is, to determine the respective shares of Margaret Brennan and of the heirs of her husband, Patrick Brennan, deceased, under the conveyance from Patrick Brennan 2d. There then remains a second question: What directions shall be given by this court, respecting the bequest to charitable uses, made by Margaret Brennan, under the circumstances of the case?

The real nature of the conveyance by Patrick Brennan 2d, is admitted to have been this: he desired only to be paid his debt, and finding that the west twenty feet of the lot would do that, he wished, like an honest man, to give the residue of it back to those who would have had it on the death of Patrick Brennan 1st, and it is probable that he desired them to take in the same proportions as if Patrick Brennan had died seized of that alone. The phraseology of the dead has already been given. It was contended by the petitioner, before the master, upon whose report this case comes up, that the true construction of this language was that the widow should have one-half of the residue of the lot after reserving the twenty feet, absolutely, and that the other half should be apportioned between her and the heirs of her husband as it would have been had her husband died seized of that half only; in which case, she would have, first, one-half in her own right, by virtue of the conveyance to her by Patrick Brennan 2d, and then, one-half of the remaining half, that is, one-quarter of the premises, under the 46th section of the statute of wills as heir to her husband, and beside this, would have her dower in the remaining quarter; making, in all, a fee in three-fourths of the premises, and dower in the other fourth. This, in my judgment, in which I agree with the master in his report, is not the true construction of the deed. It will be observed that the words, "said premises" are used in every clause of this

conveyance; and I think, wherever used, they refer to the same lot or part of a lot, namely, that conveyed by Patrick Brennan 2d to Margaret Brennan, and the next of kin of her husband. Thus, the widow was to take one-half of *said premises* in fee simple, and moreover such other and further interest, if any, in the remaining half, * * * as the said Margaret * * * as widow of the said Patrick Brennan, deceased, would be entitled to, under the law of Illinois, if her husband had died seized of an unencumbered title, in fee simple, to *"the said premises,"* not to the remaining half of said premises.

Now, had her husband died seized of a fee in the *said premises,* under the conditions stated, his widow would clearly have been entitled to one-half of the whole in fee, and to dower in the other half, under the 46th section of the statute of wills. Such, therefore, must have been the decree of the court, had she applied for a partition during her life time. As she died without making such an application, her right of dower has fallen in, and hence her heirs are entitled to only one-half of the lot, subject to the terms of the will.

The second question presents more difficulty. This bequest of money to the executor of Margaret Brennan, to be disposed of for "such charitable or religious purposes as he might think fit," seems to have left a discretion in the executor, as to both the objects and the recipients of the bounty. Dunne died, having done nothing whatever towards executing his trust, except to qualify as executor, and, it is said, to collect and use for his own purposes the personal estate of his testatrix.

There is, I think, no doubt that this is a bequest for charittable uses, within the meaning of the statute of Elizabeth, chapter 43, section 4, determining the description of trusts of that nature which the law will countenance and enforce. The uses prescribed by Margaret Brennan's will are thus stated, "and all the rest and residue of the proceeds of said real estate, is to be given by my executor to such charitable and religious purposes, as he may deem fit."

The uses which are countenanced by the statute of Elizabeth, and which courts of equity are authorized by it to en-

23

force as charities, are as follows: "Devises for the relief of aged, impotent and poor people; for the maintenance of sick and maimed soldiers and mariners; for schools of learning, free schools, and scholars at the universities; for repairs of bridges, ports, havens, causeways, *churches,* seabanks and highways; for education and preferment of orphans, the maintenance of houses of correction, for the marriage of poor maids," *et cetera.*

The word *charitable* in the bequest of Margaret Brennan, must be construed to refer, generally, to any of the uses which are defined in this statute, and to none others; and the word *religious,* as relating especially to one of the uses therein enumerated, namly, *repairs of churches,* the word "repairs," doubtless, to receive a liberal construction. So far, then, as the nature of the charities contemplated by the will is concerned, the bequest is not void as contravening that statute.

Now, will this court award to the administrator of Margaret Brennan *de bonis non,* a discretion to execute the will in the distribution of this bequest, as he may deem fit? Such a course is sanctioned by none of the authorities, and it is doubtful if such an order was ever made by a court of equity. If the court will not direct the administrator *de bonis non* to execute this trust, will it itself attempt it? Will it, in other words, provide a scheme of charities to which this bequest shall be applied, instituting inquiries as to the probable direction the deceased executor would have given to the charity, had he lived; or if, despairing of ascertaining precisely the intention of either the donor, or her executor, coming as near to it as may be, thus, as it is called in equity, executing this trust, *cy pres?*

This is one of the most difficult questions in equity jurisprudence. There is no doubt, in general, of the jurisdiction of a court of chancery to enforce trusts for charitable uses. The power was either given, or recognized as existing already, in that court, by the statute 43 Elizabeth, chapter 4 referred to, which is in force in this state. The better opinion seems to be, that courts of equity always had that power, even before and independently of that statute. See 2 Story, Eq. Jur.

sections 1142–1162; 2 Redf. on Wills, 776 and following pages.

A court will not hesitate to interfere and compel the execution of such a trust, whenever it is clearly expressed in the will; where the trustee is named, or is easily ascertainable; or where the objects of the testator's bounty are pointed out; but whether, where the persons beneficially interested in the charity are not described, perhaps not even known to the testator, but a discretion to name them, and to determine the proportions in which they shall receive it, has been left to the executor; and, especially, where the executor, as here, has died, without having taken any steps towards executing the trust, the court will then step in to execute it, is a far different question, upon which our American courts have not been agreed.

In England, the Lord Chancellor has always had extensive authority in cases of this kind. But in what character has he been understood to act? Has he, in assuming to exercise that authority, acted in his ordinary capacity as chancellor, or as commissioner of the king, who, as *parens patriae*, undoubtedly has the power, as a branch of his prerogative, to intervene and name the objects of a charity, in danger of lapsing for want of a trustee, or because of the vagueness of the trust. 4 Kent. Com. 508 and note; 2 Redf. on Wills, 828; *Mogridge v. Thackwell*, 7 Vesey, Jr., 36. In either of these cases, it would be equally the Lord Chancellor who would intervene; in the one case, however, in the exercise of his ordinary chancery jurisdiction over trusts, and, in the other, as the agent through whom the king exercises his extraordinary prerogative. In this country the question has been variously decided, according to the views entertained of the nature of the power. Thus, in *Saltonstall v. Saunders*, 11 Allen (Mass.) 446, the supreme court of Massachusetts assert a jurisdiction over charities almost co-extensive with that of the chancellor of England. On the other hand in New York, in *Williams v. Williams*, 4 Selden, 525, 548, it was held, that the courts of equity of that state could only administer such charities as create a trust within the strictly equitable cognizance of such

courts. In deciding this case Judge Denio said: "In that class of cases, therefore, where the gift is so indefinite that it cannot be executed by the court, * * * the claim of the representatives of the donor must prevail over the charity. The reason is, that we have no magistrate clothed with the prerogatives of the crown, and our courts of justice are entrusted only with judicial authority. Where the gift is capable of being executed by a judicial decree, I know of no reason why the court should refuse to excute it." He then adds: "My own opinion is, that the distribution of powers among the great departments of the government which is a fundamental doctrine in the American system, would prohibit the courts from exercising a jurisdiction so purely discretionary." From this I infer, that in the opinion of Judge Denio, the power in question was a branch of the royal prerogative, not a judicial power, and that consequently it was not inherited by courts of chancery in this country on its separation from Great Britain. The cases on this interesting point are collected and discussed in 2 Story, Eq. Jur., section 1167–1183; 2 Redf. on Wills, 776 and following pages.

Our supreme court have not passed, so far as I am aware, upon precisely this question. In *Heuser v. Harris,* 42 Ill. 425, they indicate, perhaps, the principles upon which they would decide it, were a case to come before them, of which the facts were such as to require an adjudication of it. Judge Breese, in deciding the case, says: "It is well settled in the English chancery courts, that where money is given to charity generally and indefinitely, without trustees or objects selected, the king, as trustee or *parens patriae,* will direct a scheme, and where trustees are appointed, the chancellor will direct a scheme for the charity, he having jurisdiction over the trust (Boyle on Charities, 238, 239) ; and this, when neither trustee nor objects are selected." He adds: "Surely the powers of a court of chancery should extend so far as to supply a trustee to manage a testamentary bequest; and, if it be admitted one could not be elected under this will, a court of chancery to carry out the intention of the testator would, by a liberal intendment, appoint one. Every reasonable act will be done,

and the most liberal construction of the will had, by a court of chancery, to aid the beneficiaries, when the intention is plain and undeniable. *Hadley v. Hopkins' Academy*, 14 Pick. 240. But without reference to 43 Elizabeth, we think that the innate, inherent jurisdiction of a court of chancery is fully competent to supply defects of this nature.

But, it should be observed, it was not necessary to the decision of that case, that the court should consider this question, because there the object of the bequest was certain, as was also the intended recipient of it. The court say: "The object of this bequest is certain, and so is the recipient, being the school district in which the farm is situated" etc. The only question was whether the school district, of which the boundaries had been changed since the date of the devise, could take the benefit of it.

On the whole, admitting that the authorities would warrant the intervention of this court to provide a scheme of charities to carry into effect this will, I have great doubt whether, under the circumstances, it ought to be done. In the first place, the amount left after the payment of the debts of the testatrix, and of the specific legacy of $500, will be but small. Secondly, there is no person or corporation before us claiming the benefit of this bequest; nor is it suggested that any such claimant exists. I doubt if it is my duty to advertise for beneficiaries under the trust, or to presume that it would be thought worth the expense, by any charitable or religious institution, to seek the distribution of this fund in its favor. Finally, the executor having died without naming the donees of the charity, admitting that a mere personal discretion to be exercised by the executor was not intended, and that the bequest has not therefore elapsed, the difficulty seems too formidable of attempting to make a distribution of the fund in accordance with the terms of the will.

A decree for the partition of the lot between the parties according to their respective interests, as stated, will therefore be entered, but the court declines to direct the execution of the will so far as relates to the charity.