Otto Kerner, Attorney General of the State of Illinois, Appellant, v. William Hale Thompson et al., Appellees.

Gen. No. 37,774.

Opinion filed February 2, 1938.

Rehearing denied February 18, 1938.

OTTO KERNER, *pro se;* JAMES G. SKINNER, Assistant Attorney General, of counsel.

JAMES W. BREEN, of Chicago, for appellee William Hale Thompson.

MR. PRESIDING JUSTICE HEBEL delivered the opinion of the court.

This appeal was passed upon by this court, in which opinion we reached the conclusion that it should be dismissed. However, the Supreme Court held otherwise and remanded the cause for a hearing on its merits.

This action was instituted by Otto Kerner, as Attorney General of the State of Illinois against William Hale Thompson, the Waterway and Flood Control Association of the Mississippi Valley, a corporation, and others to protect and preserve a certain fund of money donated in 1927 for the use and benefit of flood sufferers in the Mississippi Valley, and to require defendant Thompson to account for and restore as a charitable trust the portion of the fund not used for the original purpose. The decree entered upon the finding of the trial court, found and decreed that the use and application made by the defendant Thompson of $72,794.79 of this fund be approved and confirmed, and ordered that the balance of the fund, amounting to $31,131.17 on deposit with the First National Bank of Chicago, be transferred and set over by defendants Thompson and the Waterway and Flood Control Association of the Mississippi Valley, a corporation, to the custody and control of the American National Red Cross, as trustee, to be used by such trustee for a purpose as closely related to the original purpose as may be. The appeal by the Attorney General of the State of Illinois is from that part of the decree which approves and confirms the use and application by the defendant, William Hale Thompson, of the sum of $72,794.79.

The cause was heard by the court upon the complaint as amended, the answer as amended, the replication of the plaintiff, and upon a stipulation of facts read into the record, and set out in full in the decree.

Immediately following the great flood in the Mississippi Valley in April, 1927, the defendant, William Hale Thompson, then mayor of the city of Chicago, by proclamation and appeals to the public received from the public as donations for the immediate relief of the flood sufferers the sum of $139,772.47. Of this sum the defendant Thompson paid for the relief of flood sufferers the sum of $35,846.51, and there was left on hand the sum of $103,925.96. At the hearing of the cause all defendants were dismissed except William Hale Thompson, the Waterway and Flood Control Association of the Mississippi Valley, and the First National Bank of Chicago. At all times the defendant Thompson had full control and disposition of the fund. On December 16, 1930, this defendant with two other defendants organized as an Illinois corporation, the Waterway and Flood Control Association of the Mississippi Valley, and shortly thereafter the fund was transferred to this corporation. Out of the sum so transferred, a total of $72,794.79 was disbursed for the following purposes:

1.—For payment of salaries of officers and employees, office rent, light and repairs, commissions and office expenses of The Waterway and Flood Control Association of the Mississippi Valley, a corporation. .$22,188.10

2.—For the publication and distribution of a magazine, the Inland Empire, in 1931, with the object and purpose of devising ways and means for the prevention of floods and to promote the development

and extension of waterways in the Mississippi Valley, to secure the passage of legislation therefor, and to create sentiment in the various Congressional Districts that would induce representatives in congress to work and vote for flood control legislation, and to aid in the development of an inland waterway system, the sum of.......................... 31,445.38

3.—For expense of a flood control conference held January 12, 13, 14 and 15, 1931, including expenses of conferences for rooms for officers and delegates, meals and entertainment, postage, printing, badges, tickets, signs, publicity, decoration and flags for delegates, and other incidental expenses.................. 4,795.40

4.—Expense of trip to Washington in February, 1931, for hearing to promote execution of flood control work by the War Department, and to secure flood control legislation, including transportation, hotel accommodation and printing....... 1,264.36

5.—Expense of inspection tour of the Mississippi Valley in April, 1931, to study flood control and ascertain what work had been done under the appropriation of congress of May 15, 1928, in the sum of.. 4,409.89

6.—Expense of waterway cruise of 1932 to inspect and survey work done under the appropriation of congress of 1928...... 1,091.66

7.—For attorney's fees, defending litigation against said defendant Thompson in re said fund .......................... 7,600.00

During the months of April and May, 1927, a flood in the Mississippi Valley caused great suffering and privation and thousands of persons were rendered homeless and were in great need of food, clothing and shelter, and the defendant Thompson, sent out a proclamation as follows:

''A great calamity has overwhelmed thousands of people in our own section of the country. Devastating floods have driven over 25,000 people from their homes in the Mississippi Valley and the danger is constantly growing. Extensive relief work will be needed in the following weeks to take care of all the sufferers.

I know that in the face of this danger which has come to the Mississippi Valley the citizens of Chicago will contribute liberally, as they have in all other instances where help was required. Therefore, as mayor of the city of Chicago, I call upon the citizens and inhabitants to give promptly and generously in this emergency, and I am confident that the response to this urgent call for help will be prompt and ample.

The need is great. Your response should be immediate, to save lives endangered by the floods. Contributions will be received by Mayor William Hale Thompson's Relief Committee and should be made payable to Charles Fitzmorris, Room 501, City Hall, Chicago.

William Hale Thompson,
Mayor.''

As heretofore stated, there was collected the sum of $139,772.47, and it is the contention of the Attorney General that it became and was the duty of defendant Thompson to devote and expend said fund for the relief of the flood sufferers and that the defendant was charged with all the duties imposed upon trustees in the case of charitable trusts; that out of the sum collected, the defendant expended and paid out for the relief of flood sufferers the sum of $35,846.51, leaving an unexpended balance of $103,925.96.

That this fund when collected was taken over and administered by the defendant Thompson, under the name of "Mayor William Hale Thompson Flood Relief Fund," and, as indicated in this opinion, was later transferred to the account of "The Waterway and Flood Control Association of the Mississippi Valley"; that this association was a corporation organized under the laws of Illinois December 16, 1930, by the defendant, Thompson, and the defendants, Richard W. Wolfe and James W. Breen; that the object for which said corporation was formed, as stated in its charter, was "to devise ways and means for the prevention of floods and to promote the development and extension of the waterways of the Mississippi Valley, and to secure the passage of such legislation as may be necessary therefor"; that the balance of the fund, after payment of $35,846.51 for the relief of the flood sufferers, at the direction of defendant Thompson, was transferred from December 18, 1930, to and including January 17, 1931, from the account known as "Mayor William Hale Thompson Flood Relief Fund" to the account of "The Waterway and Flood Control Association of the Mississippi Valley"; that the sum of $72,794.79 was disbursed for the purposes hereinabove enumerated.

The court in its decree followed the suggestion of the Attorney General and applied the *cy pres* rule when it decreed:

"That the defendant, William Hale Thompson, be and he is hereby removed as trustee of the said fund or any part thereof collected for the relief of flood sufferers in the Mississippi Valley, and that the defendants, William Hale Thompson and The Waterway and Flood Control Association of the Mississippi Valley, a corporation, be and they each are hereby directed to transfer and set over within ten (10) days from the date of this decree to the custody and control of the American National Red Cross, a corpora-

tion, as trustee, the said fund or sum of Thirty-one Thousand One Hundred Thirty-one Dollars and Seventeen Cents ($31,131.17) which sum is now on deposit with the First National Bank of Chicago to the credit of The Waterway and Flood Control Association of the Mississippi Valley, a corporation, to be used by said American National Red Cross for the relief of those who may be caused suffering in the future by reason of any floods which may occur in the Mississippi Valley, or for a purpose as closely related to the original purpose as may be. . . ."

The sum of $31,131.17 was turned over by the defendants to the American National Red Cross, a corporation, as trustee, and the appeal by the Attorney General is from that part of the decree approving the action of the defendant William Hale Thompson in disbursing the sum of $72,794.79 for the purposes indicated in the statement of facts. It is contended by the attorney general that the disbursement of this fund was not applied in accordance with the accepted doctrine of *cy pres* rule. It is to be noted from the opinion of the court that in making its findings the court decreed that the moneys were to be applied in accordance with this doctrine, and the balance was to be set aside and held for further distribution for the relief of flood sufferers in the Mississippi Valley, or for a purpose as nearly related to the original purpose as may be.

The purpose of the fund accumulated was controlled by the proclamation and appeal for funds issued by the defendant William Hale Thompson at the time he was mayor of the city of Chicago. It is to be noted "that extensive relief work will be needed . . . to take care of all the sufferers," and it was for that purpose the contributions received were to be applied, and for no other purpose, and as trustee of this fund, the defendant Thompson was not authorized to expend the surplus for uses outside the trust.

It appears from the facts as stipulated to by the parties to this litigation that it was two years after the last payment was made for relief of sufferers from this flood that the Waterway and Flood Control Association of the Mississippi Valley, a corporation, was organized and the balance of the money turned over to it by the defendant William Hale Thompson. It was never within the contemplation of the parties contributing to this worthy cause at the time the money was subscribed that the money was to be used for the purpose of paying the expense of maintaining an office, paying salaries of officers and employees, etc., after the Waterway and Flood Control Association of the Mississippi Valley was incorporated; nor was it contemplated, when the appeal was made to the public for contributions to this fund, that part of the money was to be used for purposes of publication, and the distribution of a magazine and the expenses incident thereto. This would apply with equal force to the other purposes which go to make up the total sum of $72,794.79, and the rule of law controlling would be that governing money subscribed such as was done in this case. The money was subscribed for a charitable purpose, and the courts will not countenance a lapse of this charity because relief was unnecessary after the defendant Thompson had paid all the expenses of such relief amounting to $35,846.51. This is forcibly illustrated by the language of the trial court in its finding—"That in accordance with the accepted principles of *cy pres* the balance of $31,131.17 now on hand . . . should be set aside and held for further distribution for the original purpose of relief for flood sufferers of the Mississippi Valley or for a purpose as closely related to said original purpose as may be." This finding of the trial court is not complained of by cross-error of the defendants, and the acceptance of the doctrine applied by the court in the instant case is best illus-

trated by an opinion of our Supreme Court in the case of *Bruce v. Maxwell,* 311 Ill. 479, where from the facts it appears that John Farrell, 80 years of age, a short time before his death conveyed certain property in Peoria, Illinois, to Mary L. Marratta, "during her life and afterwards to go to build an old man's home. Reuben Bruce, trustee." The court said:

"The *cy pres* rule was an English rule and formerly resorted to as an exercise of the prerogative power of the crown but is applied in this country as an exercise of judicial power. The basis of the rule is, that where the clear intention of the donor was that the gift should be devoted to a charitable purpose and the trust cannot be administered in the exact way directed, the donor's purpose will not be allowed to fail but the exact directions of the donor as to management of the trust may be regarded as merely directory, and, if necessary to preserve the trust and carry out the leading purpose of the donor under the *cy pres* doctrine, a court may apply it to a similar purpose by different means. . . .

". . . It is true, the proof shows he had never been charitably inclined and was estranged from his children, who were all adults. We are warranted in concluding his desire was that after the life estate conveyed had terminated, the property should be used in providing a home for old men who were in need of a home. The words used in the deed were to build a home, but clearly signify his intention was to devote the property to the purpose of assisting and relieving old men. We are of opinion the court had the power *cy pres* to administer the trust by devoting it to a similar purpose in a way which would be of practical benefit to the objects of the charity, and should not have decreed that the trustee carry out the trust according to the terms imposed by the deed."

This rule has been generally accepted by the courts, not alone in this country but also in England, and, as has been noted, the purpose of applying the *cy pres* rule was not to change the object or purpose for which the money was subscribed. The Supreme Court in passing upon a like question in *Heuser v. Harris*, 42 Ill. 425, said:

"The counsel for appellants claim that the court will not under the *cy pres* power make a disposition of this property different from that proposed by the testator. But the authorities cited show, if the mode the testator has designated is impracticable, and counsel insist it is, then the court can and will substitute another mode, *cy pres* or as near the one designated as may be practicable.

"The object of the bequest cannot be changed. As this court said in *Gilman et al. v. Blackburn et al.*, 16 Ill. 225, and referred to by appellants' counsel, the intention of the donor of a charity will control unless that is impracticable, in which case it may be altered *cy pres*, and that charities are administered by the courts on *cy pres* principles for the very purpose of sustaining and carrying into effect the intention; but they cannot change the object or place because the fund could be more judiciously and efficiently applied in another place, or to a different object. This doctrine of *cy pres* has no place in legacies to individuals, but, in a charity like this, there is reason and good sense in presuming, that, had the testator known the election of a trustee, in the mode he proposed, his executing bond, and to serve as such gratuitously, he would have adopted another mode, and the court must act as he himself would have done, and this is the foundation of the doctrine *cy pres*. An approximation to the intention of the testator, as near as possible, is all that is meant by this doctrine."

The Attorney General contends, and we quite agree with his views, that it is not permissible to apply the fund to an organization not in existence when the fund was created or donated, and whose objects and purposes are different from the object or purpose for which the fund was created or donated. As we have stated before in our opinion, the object of the fund was determined and fixed by the appeal and the proclamation in 1927, and when these funds were contributed for the purpose of the appeal, William Hale Thompson at once became and was the trustee of such fund, and the appeal certainly cannot be construed to mean that the fund was to be used after the period of time for the relief of flood sufferers had passed to organize the defendant corporation, the Waterway and Flood Control Association of the Mississippi Valley, for the purpose set forth in its charter, which is "to devise ways and means for the prevention of floods and to promote the development and extension of the waterways of the Mississippi Valley, and to secure the passage of such legislation as may be necessary therefor." While the purpose of the organization may have been a proper one, still the courts are controlled by the doctrine laid down by courts of last resort, which is, that a fund is not to be used for any purpose other than that for which it is subscribed, and the court indicated the purpose of the fund when it directed that the amount remaining at the time of the filing of the bill be turned over to the American National Red Cross, a corporation.

From the conclusions we have reached, the trial court erred in allowing the defendant William Hale Thompson to deduct the sum of $72,794.79 from the total amount remaining after the payment of $35,846.61 for the relief of the Mississippi Valley flood sufferers.

The decree is reversed and the cause is remanded with directions to the trial court to modify the decree

heretofore entered, by charging the sum of $72,794.79 to the defendant William Hale Thompson, to be accounted for within the period of time fixed by the court and paid to the American National Red Cross, a corporation, as trustee, to be used for the relief of persons who may suffer in the future by reason of any floods that may occur in the Mississippi Valley, or for a purpose as closely related to the original purpose as may be.

*Reversed and remanded with directions.*

DENIS E. SULLIVAN and HALL, JJ., concur.